**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Edwin HILL, Defendant–Appellee.**

No. 07CA2171.

Colorado Court of Appeals, Div. II.

Feb. 19, 2009.

Rehearing Denied June 25, 2009.

Carol Chambers, District Attorney, Andrew Cooper, Senior Deputy District Attor-

ney, Centennial, Colorado, for Plaintiff-Appellant.

Douglas K. Wilson, Colorado State Public Defender, John D. Becker, Deputy State Public Defender, Castle Rock, Colorado, for Defendant-Appellee.

Opinion by Judge CARPARELLI.

The People appeal from the district court's order vacating defendant Edwin Hill's judgment of conviction and sentence and granting him a new trial for unlawful use of a controlled substance. We reverse the district court's order and remand with directions.

## I.  Background

Defendant, a prisoner at the Limon Correctional Facility, provided a urine sample that tested positive for morphine. He was charged with possession and use of a controlled substance.

At a status conference twenty-five days before trial, defense counsel stated that he had told the People that defendant wanted the laboratory technician who did the testing to testify at the trial. The prosecutor took no exception to the request, and the court stated that the People had notice that defendant had requested the "actual technician" who did the testing. This was a timely request under section 16-3-309(5), C.R.S.2008, which requires the party requesting the laboratory's employee or technician to notify the other party and the witness of this request at least ten days before trial.

At trial, Dr. Andrew Fischinger, the testing laboratory's director, was qualified as an expert and testified that the urine sample had tested positive for morphine. Defendant stipulated to the witness's qualifications as an expert. He objected, however, to the admission of laboratory chain of custody documents and to data and graphs (GC/MS report) produced by a gas chromatograph/mass spectrometer (GC/MS). Dr. Fischinger testified that the GC/MS report showed that defendant's urine sample tested positive for morphine. The court overruled the objections.

A jury found defendant not guilty of possession, but guilty of use of a schedule II controlled substance under section 18-18-401(1)(a)(I), C.R.S.2008. Defendant moved for a new trial, asserting that Dr. Fischinger was not "the actual lab technician who did the testing," and, thus, was not the proper person to testify under section 16-3-309(5).

The court conducted a hearing, and granted the motion, concluding the laboratory report was not admissible. In its order, the trial court stated that Dr. Fischinger's involvement was limited to reviewing a report containing initials of others who performed preparatory work and the computer-generated results of analysis. The court concluded that, because Dr. Fischinger did not handle the specimen for identification or prepare it for analysis, he was not able to provide personal knowledge of the steps actually taken before and during the course of testing.

The People appeal.

## II.  Standard of Review

■ The decision to grant or deny a new trial is generally entrusted to the trial court's discretion. *People v. Gallagher,* 194 Colo. 121, 124, 570 P.2d 236, 238 (1977). However, where, as here, the ruling is based on a question of law, we review de novo. *People v. Wadle,* 77 P.3d 764, 767 (Colo.App.2003), *aff'd,* 97 P.3d 932 (Colo.2004).

## III.  Statutory Interpretation

■ The appropriate construction of a statute is a question of law. *People v. Golden,* 140 P.3d 1, 4 (Colo.App.2005). We review de novo a trial court's interpretation of a statute governing the admissibility of a particular type of evidence. *People v. Williams,* 183 P.3d 577, 578 (Colo.App.2007).

■ When interpreting a statute, our primary duty is to give effect to the intent of the legislature. We look first to the plain language of the statute before invoking alternative canons of statutory construction. *People v. Banks,* 9 P.3d 1125, 1128 (Colo.2000). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct.

843, 136 L.Ed.2d 808 (1997); *see also Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). We read the statute as a whole "to give 'consistent, harmonious and sensible effect to all of its parts,'" in accordance with the presumption that the legislature intended the entire statute to be effective. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (quoting *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo. 2004)). "A statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004). We avoid constructions that are at odds with the legislative scheme. *Klinger,* 130 P.3d at 1031.

## IV. Section 16–3–309(5)

Section 16–3–309(5) states:

Any report or copy thereof or findings of the criminalistics laboratory shall be received in evidence in any court, preliminary hearing, or grand jury proceeding in the same manner and with the same force and effect as if the *employee or technician* of the criminalistics laboratory *who accomplished the requested analysis, comparison, or identification* had testified in person. Any party may request that *such employee or technician* testify in person at a criminal trial on behalf of the state before a jury or to the court, by notifying the witness and other party at least ten days before the date of such criminal trial.

(Emphasis added.)

In *People v. Mojica–Simental,* 73 P.3d 15, 18–19 (Colo.2003), the supreme court held that when a defendant notifies the prosecution at least ten days before trial that he or she wants the laboratory technician present at trial, the request prevents the admission of the laboratory report without the foundational testimony of the appropriate lab technician. The court stated that when a defendant wants to contest the reliability or accuracy of a lab test, a lab technician's presence is crucial to secure the defendant's right to confront the witnesses against him or her. *Mojica–Simental,* 73 P.3d at 19.

In *Williams,* the defendant also requested the presence of the laboratory technician. However, the agent who had tested the suspected controlled substance, identified it as methamphetamine, and prepared the report was not available to attend the trial. In the agent's stead, the prosecution relied on the testimony of the supervisor of the laboratory, who had no personal knowledge of the testing. Based on that testimony, the court admitted the laboratory report as a business record. *Williams,* 183 P.3d at 579. A division of this court concluded that the trial court abused its discretion when it admitted the lab report without testimony from the testing agent. *Williams,* 183 P.3d at 578.

## V. Evidence

Dr. Fischinger testified about testing procedures at trial and at the hearing on the motion for a new trial.

### A. Trial Testimony

At the trial, Dr. Fischinger testified that defendant's sample was not tested manually by any technician, but was tested by the GC/MS. He stated that another employee prepared a portion of the sample for testing and analysis by the GC/MS. This preparation included adding a buffer to the urine sample, pouring it onto solid-phase extraction (SPE), eluting the SPE, transferring the extract to dry-down, adding a derivatizing agent, and transferring the sample to a vial for the GC/MS. Dr. Fischinger testified that he identified the GC/MS report pertaining to defendant's urine sample and explained that he personally reviewed the information regarding calibration controls to ensure that the instrument was properly calibrated. He then explained that, as a result of his review and analysis of the printed graphs, he concluded that defendant's sample contained morphine, and he connected the test results to defendant based on the laboratory chain of custody documents. Dr. Fischinger testified that he was the only employee at the lab to analyze defendant's sample or to reach a conclusion that the sample contained morphine.

Exhibit 7, entitled "AFFIDAVIT of Certifying Scientist," describes Dr. Fischinger's review and certification of the laboratory testing procedure for defendant's sample, and is signed by Dr. Fischinger and notarized. The affidavit certifies that Dr. Fischinger reviewed the laboratory chain of custody for defendant's specimen and determined the chain of custody was conducted properly. Dr. Fischinger also certified that defendant's urine sample tested positive for the drug indicated on Exhibit 4, a computer generated "CAP–FUDT REPORT" (laboratory report) bearing Dr. Fischinger's printed name. The court overruled defendant's objection that Exhibit 4 was not admissible because Dr. Fischinger did not personally prepare it. Defendant did not object to the admission of Exhibit 7.

### B.   Motion Hearing Testimony

At the hearing on the motion for new trial, Dr. Fischinger explained that laboratory employees place a portion of each urine sample into a testing vial, place a bar code on each vial, and put multiple samples into a GC/MS, which analyzes thousands of drug screens per hour. Dr. Fischinger testified that the instrument, not the employee, does the testing and analysis. He also acknowledged that he never handles the samples. After the instrument has completed the tests, an employee removes the test vials and discards them with their contents. The data derived by the GC/MS is printed and includes numeric and graphic information about the test results.

Dr. Fischinger testified that he reviews the printed results to identify vials that appear to have tested positive, and that he reviews those results to ensure that the controls were correct, analyzes the data based on various factors, and determines whether the test was in fact positive.

Defendant's cross-examination of Dr. Fischinger emphasized that Dr. Fischinger had not personally transferred any portion of the sample to the vial, placed the vial in the GC/MS, or removed the vial from the instrument. Although defendant referred to the employees who accomplished those tasks as "technicians," Dr. Fischinger disagreed.

Defendant did not elicit testimony that the individuals who performed those tasks accomplished the analysis, comparison, or identification of whether the urine evidenced prior use of morphine. Instead, he emphasized that Dr. Fischinger did not personally handle the sample.

### VI.   Analysis

██ The People contend that the trial court erred when it granted defendant a new trial. Defendant contends that Dr. Fischinger did not handle the urine sample at any stage of the process, and that, contrary to Dr. Fischinger's testimony, the laboratory personnel who performed the preparatory tasks were "technicians." He contends that section 16–3–309 requires the prosecution to produce laboratory personnel who handled the sample. We conclude that Dr. Fischinger's testimony met the statutory requirements, and, therefore, that the trial court erred when it granted defendant a new trial.

In accordance with section 16–3–309(5), the prosecution was required to provide as a witness "the employee or technician of the criminalistics laboratory who *accomplished the requested analysis, comparison, or identification.*" (Emphasis added.) Without a definition provided by the legislature, we turn to the plain meaning of "accomplish," which is "to execute fully: perform, achieve, fulfill." *Webster's Third New International Dictionary* 12 (2002).

We conclude that the statute requires the prosecution to provide the person who performed the analysis, comparison, or identification requested by the law enforcement authority transmitting the sample. This is the person, regardless of title, who was qualified and authorized (1) to perform, and did perform, the test; (2) to observe the results and interpret them; and (3) to render expert conclusions regarding the identity of the controlled substances present in the sample or specimen.

At the hearing on the motion, Dr. Fischinger testified that the tests were performed by the GC/MS, that he personally reviewed the results, and that he was the person who was qualified and authorized to

interpret the GC/MS report and to render an expert conclusion on behalf of the laboratory that defendant's sample tested positive for morphine.

Although Dr. Fischinger testified that someone else screened the data provided by the GC/MS and eliminated the negative tests, he testified that he was the person qualified and authorized to review the apparently positive reports; to review the reported instrument calibration, sample tracking information, and data values; and to render the opinion provided to the requesting law enforcement entity.

We reject defendant's argument that the prosecution is required to present at trial a laboratory technician who handled the defendant's sample. The supreme court has held that in the absence of any evidence of tampering or lack of authentication, the proponent of evidence relating to laboratory tests is not required to call each witness who may have handled the sample. *People v. Sutherland*, 683 P.2d 1192, 1197 (Colo.1984). Moreover, nowhere does section 16–3–309(5) state that the prosecution is required to present such witnesses, and under a plain meaning analysis, we decline to conclude that that was the legislature's intent. Although defendant perhaps could have presented evidence that the chain of custody was imperfect in order to discredit the reliability of the admitted laboratory reports, he made no such effort.

We next conclude that Dr. Fischinger was the proper witness under section 16–3–309(5). Unlike in *Williams*, where the prosecution did not present the person qualified and authorized to determine that the suspected controlled substance was methamphetamine, Dr. Fischinger was qualified and authorized to determine that the GC/MS results showed the presence of morphine in defendant's urine. The record contains no evidence, and defendant does not assert, that any of the individuals who physically handled the sample was qualified and authorized to interpret the GC/MS report and render an expert opinion based on it.

Accordingly, we conclude that, unlike the witness in *Williams*, Dr. Fischinger was a proper witness under section 16–3–309(5), and that defendant did not demonstrate through cross-examination of Dr. Fischinger that the statute required the prosecution to provide any other laboratory employee or technician. While we note that in some cases, several people may accomplish the analysis, comparison, or identification and, thus, presenting one person at trial may not always be sufficient, in this case Dr. Fischinger was the only employee who accomplished the analysis under the statute and the prosecution properly presented him alone.

Shortly after defendant filed his motion for a new trial, a division of this court issued an unpublished opinion addressing the same issue and reversing this trial court based on *Williams*. For the court's benefit, we have concluded that the cases are distinguishable on their facts.

## VII. Confrontation Clause

In his answer brief defendant states, "The lack of a lab technician being present also violates Mr. Hill's rights to confrontation and due process." He also states, "[A]s the District Attorney notes in their [sic] reply, it deprives Mr. Hill of the ability to [sic] his right of confrontation. And clearly, Mr. Hill has that right. *Crawford v. Washington*, 541 U.S. 36, 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)."

Defendant provides no analysis or argument to support these conclusory statements. In addition, contrary to defendant's assertion, neither the prosecutor's response in opposition to his motion for a new trial, nor its opening brief on appeal, nor its reply brief, states that the absence of a technician or employee other than Dr. Fischinger deprived defendant of his right of confrontation. And further, defendant's motion for new trial did not assert a violation of his right to confrontation.

We conclude that defendant has not adequately presented the issue, and, therefore, we decline to consider it. *See* C.A.R. 28(a)(4), (b); *People in Interest of D.B–J.*, 89 P.3d 530, 531 (Colo.App.2004) (declining to address contention that lacked references to supporting facts in record, specific arguments, or legal authorities); *People v.*

*Simpson,* 93 P.3d 551, 555 (Colo.App.2003) (declining to consider "a bald legal proposition presented without argument or development").

### VIII. Conclusion

Accordingly, we conclude that the trial court erred in its interpretation of the statute and abused its discretion when it granted defendant's motion for new trial.

The order is reversed, and the case is remanded with directions to reinstate the jury verdict, enter judgment, and sentence defendant.

Judge TAUBMAN and Judge CONNELLY concur.